## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SS NILES BOTTLE STOPPERS, LLC, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No.: 3:16-cv-320 |
| | : | |
| STEER MACHINE TOOL & DIE CORP., | : | **FILED** |
| | : | **SCRANTON** |
| Defendant | : | |
| | : | **Jury Trial Demanded** FEB 2 2 2016 |

PER _____

DEPUTY CLERK

### COMPLAINT

Plaintiff, SS Niles Bottle Stoppers, LLC ("SS Niles"), by and through its attorneys,

asserts claims under the Lanham Act and Pennsylvania law against Defendant Steer Machine

Tool & Die Corp., ("Steer"), arising from Steer's advertising of bottle stoppers using the

infringing SS BOTTLE STOPPERS mark, willfully copying SS Niles' product names and

communications of false statements to SS Niles' customers and prospective customers

disparaging SS Niles and suggesting a false connection with SS Niles.

In support of its claims, SS Niles alleges as follows:

### PARTIES

1.     Plaintiff SS Niles is a corporation formed and existing under the laws of the

Commonwealth of Pennsylvania.  SS Niles has a place of business at 49 Leeds Road, Newville,

PA 17241.

2.     Defendant Steer is a corporation formed and existing under the laws of the

Commonwealth of Pennsylvania.   Steer has a place of business at 3113 Lake Ariel Highway,

Honesdale, PA 18431.

### JURISDICTION AND VENUE

3.      The Court has personal jurisdiction over Defendant because Steer is organized

under the laws of the Commonwealth of Pennsylvania, and its principal place of business is in

Pennsylvania.

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

§§ 1331, 1338, and 1367.

5.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) because Steer is located

in this District, and also because a substantial portion of the conduct giving rise to SS Niles'

claims against Steer occurred in this District.

## BACKGROUND

The Trademarks

6.      Ruth Niles ("Niles"), President of SS Niles, first began making bottle stoppers in March

2005.

7.      Niles used the mark SS NILES BOTTLE STOPPERS ("SS NILES Mark") and the

Product Numbers: 301 and 302 since she first began selling the product in 2005.  She also added

the following product numbers as her line of products expanded: 301, 302, 303, 304, 305A,

305B, 305C, 306, 307 401, 403, 404, 407, 701, 702, 703, 704, 705A, 705B, 705C, 706, 707

("Product Numbers").

8.      The SS NILES Mark is widely advertised on the Internet and in other media, both print

and electronic, at significant expense to SS Niles.

9.      SS Niles has filed a trademark application for the SS NILES Mark in connection with

metal bottle stoppers with United States Patent and Trademark Office, Serial Application No.:

86/830,938.

10.    Due to such investment and success with the SS NILES Mark, it has become very familiar to SS Niles' many customers, and therefore is very valuable to SS Niles.

11.    As a result of its reputation for quality goods in the glass blowing, woodturning and bottle stopper industries, SS Niles has developed extremely valuable goodwill in the SS NILES Mark.

12.    In March 2011, Niles formed SS Niles under which Niles' business operated.

13.    Niles assigned all her rights *nunc pro tunc* in the SS NILES Mark along with the goodwill associated thereby to SS Niles on December 4, 2015, effective March 25, 2011.

Issues with Steer's Manufacturing

14.    In 2005, Niles approached Steer about manufacturing her unique stopper design and Steer began manufacturing the bottle stoppers for Niles.

15.    Steer represented to Niles that it would use 18-8 304 FDA grade stainless steel to manufacture the bottle stoppers for best results.

16.    Niles began noticing markings on some of the stoppers ("Marked Stoppers") that she received from Steer in the first year of placing orders with Steer. During that first year Niles asked about the Marked Stoppers and was told by Steer that it was the machining and that they would fix the problems.

17.    On average, approximately 20% of each shipment that Niles received from Steer contained bottle stoppers that she could not sell because they contained markings on them.

18.    Marked Stoppers resulted from the poor packaging and handling that Steer employed and the lack of any type of inspection by Steer before it shipped the stoppers.

19.    Niles returned some of the Marked Stoppers that she received from Steer for a refund.

20.     After receiving complaints and returns from Niles, rather than fix the problem, Steer decided to buy Niles a wheel and a compound so that Niles herself could attempt to remedy the problem that Steer created.

21.     On or around 2013-2014, Niles also received complaints from many of her customers about the quality of the bottle stoppers because they began developing a yellow color and/or rust when left in bottles of liquid for a day or more ("Defective Stoppers").

22.     A number of Niles customers were questioning if the stainless steel was in fact 304 FDA grade as there should not have been any adverse effect from any liquids or acidic foods.

23.     After Niles questioned the quality of the steel, Steer assured her it was 304 and promised a metal analysis report to her, but never produced the metal analysis as proof.

24.     Due to the amount of time and resources Niles had to expend inspecting each stopper, cleaning where necessary and installing the o-rings and, Niles began searching for more competent manufacturing companies in the United States.

25.     On or around 2012, Niles began using another manufacturing company ("New Manufacturer") that was already manufacturing mandrels for her, to make some of her bottle stoppers.

26.     On or around February 2015, Niles began solely ordering her bottle stoppers from the New Manufacturer due to, *inter alia*, the consistent top quality machine finish it produced.

Steer's Bad Acts

27.     In November 2015, Niles noticed that Steer had begun selling bottle stoppers to consumers for the first time at the same cost which it had sold to SS Niles.

28.     Steer had never previously had any interest into selling directly to consumers prior to Niles discontinuing her business with them.

4

29.     Steer began selling its bottle stoppers on SSBottlestoppers.com and using advertisements for bottle stoppers using the trademark SS BOTTLESTOPPERS ("Infringing Mark"). A screenshot of the ssbottlestoppers.com webpage and a Steer advertisement using the Infringing Mark and appearing in "Woodturner" magazine are attached hereto as Exhibits A and B, respectively.

30.     Steer also began selling its bottle stoppers under the Product Numbers in an effort to confuse consumers as to the source of Steer's products.

31.     Steer registered the Infringing Mark as a Fictitious Name in Pennsylvania on August 14, 2015.

32.     Niles made a telephone call to Steer on or about November 24, 2015 and had a conversation with one of Steer's owners, Eric Seeuwen, regarding this infringing conduct.

33.     Niles asked Eric Seeuwen why Steer was trying to steal her customers and put her out of business, to which Eric Seeuwen replied that she had "taken her business away from him so she was the one who started it."

34.     Since November 2015, Niles has been contacted by some of her customers, many of whom are listed on the SS Niles website, as well as prospective customers regarding confusion about the source of Steer's bottle stoppers. A sample of such inquiries are attached hereto as Exhibit C.

35.     In December 2015, Niles received an email forwarded to her by one of her customers from Steer to Niles' customer claiming that the stoppers sold by SS Niles are the same as the bottle stoppers sold by Steer. Steer also stated this it had made all of Niles' bottle stoppers up until 2015 and that the reason that Niles chose to use the New Manufacturer was because of a

$0.12 difference in price.  A copy of the communication from Steer is attached hereto as Exhibit D.

36.     The statements made in this communication are false, as Steer was not selling the same bottle stopper sold by SS Niles, Steer did not manufacture ALL of Niles' bottle stoppers from 2005-2015, SS Niles stopped ordering the stoppers from Steer primarily because of the inconsistent quality of Steer's products and the intense amount of time and effort that Niles had to expend to ensure quality assurance.

37.     Upon information and belief, Steer has communicated with SS Niles' current and prospective customers untruthfully stating that SS Niles does not sell the originally designed stoppers that it was selling before taking its business away from Steer and that these originally designed stoppers can only be purchased from Steer.

38.     Steer's communications to SS Niles' customer were intended to result in pecuniary loss to SS Niles, resulted in pecuniary loss to SS Niles and were known by Steer to be false.

39.     Steer has told Niles' customers that it had a "business agreement" with Niles, however this statement is false because they only operated as manufacturer and customer.

40.     Steer knew the identity of many of SS Niles' customers and specifically targeted SS Niles' customers in an ad campaign including sending fliers, postcards and other marketing materials directly to SS Niles' customers.

41.     Many of SS Niles' customers who sent flyers, emails and other advertisements from Steer were confused as to the source of Steer's bottle stoppers.

42.     Upon information and belief, many of SS Niles' previous customers have discontinued buying SS Niles' bottle stoppers due to Steer's conduct.

6

43.    As a direct and proximate result of Steer's conduct, SS Niles has sustained substantial damages in the amount of $14,000 and is projected to lose at least $120,000 annually in the future.

## FIRST CAUSE OF ACTION
### (False Designation of Origin/Unfair Competition in Violation of 15 U.S.C. § 1125 (a))

44.    SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

45.    SS Niles' has used the SS NILES Mark in interstate commerce and it is distinctive and/or has acquired distinctiveness in the marketplace.

46.    Steer's use of the Infringing Mark to advertise, sell, and offer for sale bottle stoppers as well as use as a Fictitious Name in Pennsylvania is without SS Niles' permission or authority.

47.    Steer's conduct has led, and will continue to lead to consumer confusion, mistake or deception, and is likely to cause consumers to believe that Steer is the source of, or has authorized, licensed, or is otherwise connected or affiliated with SS Niles, all to SS Niles' detriment.

48.    Steer's use of the Infringing Mark in connection with bottle stoppers is calculated to deceive the public and pass off Steer's goods as the goods of SS Niles.

49.    Steer's conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.    Steer's conduct constitutes unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51.    Based on Steer's conduct and statements made by Steer's owners to Niles, Steer's prominent use of the Infringing Mark in connection with bottle stoppers is willful and intended to damage SS Niles' business.

52.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

53.     Further, as a result of Steer's conduct described above, SS Niles has sustained irreparable injury for which no adequate remedy at law exists.

## SECOND CAUSE OF ACTION
### (False Designation of Origin/Unfair Competition in Violation of 15 U.S.C. § 1125 (a))

54.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

55.     SS Niles' Product Numbers have been used in interstate commerce and are distinctive and/or have acquired distinctiveness in the marketplace.

56.     Steer's use of the SS Niles' Product Numbers to advertise, sell, and offer for sale bottle stoppers is without SS Niles' permission or authority.

57.     Steer's conduct has led, and will continue to lead to consumer confusion, mistake or deception, and is likely to cause consumers to believe that Steer is the source of, or has authorized, licensed, or is otherwise connected or affiliated with Steer, all to SS Niles' detriment.

58.     Steer's use of the Product Numbers in connection with bottle stoppers is calculated to deceive the public and pass off Steer's goods as the goods of SS Niles.

59.     Steer's conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Based on Steer's conduct and statements made by Steer's owners to Niles, Steer's prominent use of the Product Numbers in connection with bottle stoppers is willful and intended to damage SS Niles' business.

61.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

8

62.     Further, as a result of Steer's conduct described above, SS Niles has sustained irreparable injury for which no adequate remedy at law exists.

### THIRD CAUSE OF ACTION
### (Trademark Infringement – Pennsylvania Common Law)

63.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

64.     SS Niles owns common law trademark rights in its SS NILES Mark throughout the United States and in the State of Pennsylvania.

65.     Steer's advertising, sale, and offer to sell bottle stoppers using the Infringing Mark for the purpose of trading off SS Niles' reputation and goodwill, garnered through its more than eleven (11) year history in the bottle stopper industry, is likely to cause confusion with and to infringe upon SS Niles' rights in its SS NILES Mark.

66.     Steer has obtained a Pennsylvania Fictitious Name registration for SS BOTTLESTOPPERS which will also likely cause confusion and infringes upon SS Niles' rights in its SS NILES Mark.

67.     Steer's acts constitute trademark infringement under Pennsylvania common law.

68.     Based on Steer's malicious use of the Infringing Mark to advertise its bottle stoppers, and on information and belief, Steer's activities are willful.

69.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

70.     Further, as a result of Steer's conduct as alleged above, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

### FOURTH CAUSE OF ACTION
### (Trademark Infringement – Pennsylvania Common Law)

71.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

9

72.     SS Niles owns common law trademark rights in its Product Numbers throughout the United States and in the State of Pennsylvania.

73.     Steer's advertising, sale, and offer to sell bottle stoppers using the Product Numbers for the purpose of trading off SS Niles' reputation and goodwill, garnered through its more than eleven (11) year history in the bottle stopper and woodturning industry, and is likely to cause confusion with and to infringe upon SS Niles' rights in its SS Product Numbers.

74.     Steer's acts constitute trademark infringement under Pennsylvania common law.

75.     Based on Steer's malicious use of the Product Numbers to advertise its bottle stoppers, and on information and belief, Steer's activities are willful.

76.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

77.     Further, as a result of Steer's conduct as alleged above, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

### FIFTH CAUSE OF ACTION
#### (Trademark Dilution in Violation of 15 U.S.C. §1125(c))

78.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

79.     The SS NILES Mark is famous and distinctive.

80.     Steer's conduct as described herein dilutes the distinctive quality of the SS NILES Mark through blurring and/or tarnishment.

81.     Steer's acts as described herein constitute trademark dilution in violation of section 439 (c) of the Lanham Act, 15 U.S.C. §1125(c).

82.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

83.     Further, as a result of Steer's conduct described above, SS Niles has sustained irreparable injury for which no adequate remedy at law exists.

## SIXTH CAUSE OF ACTION
### (Trademark Dilution Under Pennsylvania Code, 54 Pa. C.S.A. §1124)

84.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

85.     The SS NILES Mark is famous and distinctive.

86.     Steer's use of the Infringing Mark in connection with bottle stoppers as well as use of the Infringing Mark as a Fictitious Name, dilutes the distinctive quality of the SS NILES Mark.

87.     Steer's acts constitute trademark dilution in violation of 54 Pa. C.S.A. §1124.

88.     As a result of Steer's acts of trademark dilution, SS Niles has and will continue to unlawfully procure business that it would not otherwise obtain fairly on the open market.

89.     SS Niles has sustained irreparable harm to its business, reputation and goodwill, and unless Steer is enjoined and restrained by this Court, Steer will continue in the activities alleged herein and as a result thereof, SS Niles will continue to sustain irreparable harm to its business, reputation and goodwill.

90.     SS Niles has no adequate remedy at law.

91.     Steer's acts have been willful and/or with wanton and reckless disregard for SS Niles' rights.

## SEVENTH CAUSE OF ACTION
### (Cyberpiracy in Violation of 15 U.S.C. §1125(d))

92.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

93.     Steer registered ssbottlestoppers.com on July 22, 2015, after SS Niles had ceased doing business with Steer.

94.     Steer has, in bad faith, registered, trafficked in and used a domain name that is confusingly similar to the SS NILES Mark.

95.     Steer's use of ssbottlestoppers.com website constitutes cyberpiracy in violation of 15 U.S.C. §1125 (d).

96.     As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

97.     Further, as a result of Steer's conduct described above, SS Niles has sustained irreparable injury for which no adequate remedy at law exists.

### EIGHTH CAUSE OF ACTION
### (Unfair Competition – Pennsylvania Common Law)

98.     SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

99.     SS Niles owns common law trademark rights in its Product Numbers and SS NILES Mark throughout the United States and in the State of Pennsylvania.

100.    Steer's advertising, sale, and offer to sell bottle stoppers using the Product Numbers and the Infringing Mark for the purpose of trading off SS Niles' reputation and goodwill, garnered through its more than eleven (11) year history in the bottle stopper industry, and is likely to cause confusion with and to infringe upon SS Niles' rights in its Product Numbers and SS NILES Mark.

101.    Steer's acts constitute unfair competition under Pennsylvania common law.

102.    Based on Steer's malicious use of the Product Numbers and SS NILES Mark to advertise its bottle stoppers, and on information and belief, Steer's activities are willful.

103.    As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

104.    Further, as a result of Steer's conduct as alleged, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

## NINTH CAUSE OF ACTION
### (Commercial Disparagement)

105.    SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

106.    Steer's act of communicating with SS Niles customers and prospective customers and knowingly and falsely representing that there is some connection between Steer and SS Niles more than Steer only being a former manufacturer of SS Niles', as well as the representation by Steer that SS Niles discontinued buying bottle stoppers due to a lower price being offered by another manufacturer, with the intent to cause pecuniary damage to SS Niles, constitutes commercial disparagement under Pennsylvania common law.

107.    Upon information and belief, Steer has also made false statements to damage SS Niles by stating that SS Niles does not sell the originally designed stoppers that it was selling before taking its business away from Steer and that these originally designed stoppers can only be purchased from Steer.

108.    As a direct and proximate result of Steer's conduct, SS Niles has sustained damages in the amount of $14,000 and will continue to sustain substantial damages.

109.    Further, as a result of Steer's conduct as alleged in this Complaint, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

## TENTH CAUSE OF ACTION
### (Tortious Interference With Prospective Economic Advantage)

110.    SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

111.    SS Niles has many customers, some of which are identified on its website.

112.    Upon information and belief, Steer contacted the customers listed on SS Niles' website with the intent of interfering with SS Niles' relationship with its customers and harming SS Niles by preventing a relationship from occurring.

113.    Steer has also commercially disparaged SS Niles to SS Niles' current and prospective customers.

114.    Steer has been selling its bottle stoppers at cost to SS Niles' current and prospective customers with the intent of persuading them not to order products from SS Niles any longer.

115.    Steer was privy to the manner in which SS Niles' ran its business as its long-time manufacturer and copied SS Niles' business model in an attempt to unfairly compete and steal customers from SS Niles with the intent of damaging SS Niles' business beyond repair.

116.    Steer does not possess any privilege to engage in such conduct.

117.    Steer's actions constitute Tortious Interference With Prospective Economic Advantage under Pennsylvania common law.

118.    As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

119.    Further, as a result of Steer's conduct as alleged above, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

### ELEVENTH CAUSE OF ACTION
#### (Unjust Enrichment – Pennsylvania Common Law)

120.    SS Niles incorporates the preceding paragraphs as if they are set forth here at length.

121.    By trading upon the goodwill of the SS NILES Mark and Product Numbers, Steer has obtained for its goods a salability which it would not have otherwise had.

14

122.    Steer willfully and deliberately infringed upon SS Niles' trademarks in order to gain an advantage in the marketplace.

123.    Steer was aware of and knowingly retained profits or other benefits as a result of this conduct.

124.    It would result in an unconscionable injustice to permit Steer to retain without compensation whatever benefit it obtained from SS Niles.

125.    Steer's conduct constitutes unjust enrichment.

126.    As a direct and proximate result of Steer's conduct, SS Niles has sustained and will continue to sustain substantial damages.

127.    Further, as a result of Steer's conduct as alleged above, SS Niles has sustained and will sustain irreparable injury for which no adequate remedy at law exists.

**WHEREFORE** Plaintiff, SS Niles, respectfully requests that this Court enter judgment in favor of Plaintiff, SS Niles, and against Defendant Steer as follows:

(A) Permanently enjoining Steer; Steer's officers, directors, agents, attorneys, servants, employees, subsidiaries, affiliates, assigns, and licensees; anyone in active concert or participation with any of them; and anyone having actual or constructive knowledge of the terms of this injunction from:

(1) infringing or using the SS BOTTLE STOPPERS mark, or any mark confusingly similar thereto, in connection with the advertising, promotion, offering for sale, or sale of any bottle stoppers or similar products;

(2) infringing or using the product numbers 301, 302, 303, 304, 305A, 305B, 305C, 306, 307 401, 403, 404, 407, 701, 702, 703, 704, 705A, 705B, 705C, 706,

707 or any mark confusingly similar thereto, in connection with the

advertising, promotion, offering for sale, or sale of any bottle stoppers or similar

products;

(3) falsely designating, falsely describing, falsely advertising, or

falsely representing that any of Steer's products are connected with SS Niles,

or are authorized, sponsored, endorsed, or approved by SS Niles; or

(4) obtaining any domain name which is identical or a colorable imitation of the

SS NILES Mark.

(5) unfairly competing with SS Niles;

(6) tortiously interfering with the economic relationships and prospective

economic relationships of SS Niles; and

(7) commercially disparaging SS Niles to SS Niles' customers and prospective

customers.

(B) Ordering Steer to deliver to SS Niles for immediate destruction all print material, and

associated advertising, marketing and promotional materials of any kind, bearing the SS

BOTTLESTOPPERS mark or any colorable imitation thereof, in Steer's possession,

custody, or control, pursuant to 15 U.S.C. § 1118;

(C) Ordering Steer to contact SS Niles' current and prospective customers that Steer had

targeted for clarification purposes and to recant the false statements it has made to them;

(D) Requiring Steer to account for and pay over to SS Niles all gains, profits, and

advantages derived from Steers' wrongful acts, including any sales made on the

ssbottlestoppers.com website;

16

(E)  Ordering the transfer of the domain name: www.ssbottlestoppers.com to SS Niles immediately;

(F) Ordering the transfer of the Pennsylvania fictitious name registration for SS Bottle Stoppers to SS Niles immediately;

(G) Awarding treble damages to SS Niles, pursuant to 15 U.S.C. §1117, in an amount to be determined at trial;

(H) Awarding statutory damages to SS Niles, pursuant to 15 U.S.C. §1117(c), in an amount to be determined at trial;

(I) Awarding punitive damages to SS Niles, in an amount to be determined at trial;

(J) Awarding costs, disbursements and attorneys' fees to SS Niles, pursuant to 15 U.S.C. § 1117, in an amount to be determined at trial; and

(K) Awarding SS Niles such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, SS Niles, hereby demands a jury trial on all issues and claims so triable.

Respectfully submitted,

Ryder, Lu, Mazzeo & Konieczny LLC

Date:   February 22, 2016

By: s/Frank A. Mazzeo
    Frank A. Mazzeo
    808 Bethlehem Pike, Suite 200
    Colmar, PA 18915
    Tel: (215) 997-0248
    Fax: (215) 997-0266
    fmazzeo@ryderlu.com
    *Attorney for Plaintiff*